JOHNSON, Judge.
This is an appeal from a jury verdict and a conviction entered thereon in the Court of Record in and for Escambia County, wherein the appellant, defendant below, was sentenced to ten years in state prison. The prosecution was for the uttering and publishing of a false, forged or altered Will. The information is drawn under Section 831.02, Florida Statutes, 1967, F.S.A.
The material portion of said Section 831.02, F.S., 1967, F.S.A., is as follows:
“Whoever utters and publishes as true a false, forged or altered record, deed, instrument, or other writing mentioned in § 831.01, knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person.

*224 Section 831.01, F.S., 1967, F.S.A., provides :
“Whoever falsely makes, alters, forges or counterfeits a . .; or a charter, deed, will, testament, . . . with intent to injure or defraud any person

It is necessary for us to keep in mind the exact language of the two sections of the Florida Statutes, supra, in order to better understand the conclusions reached by this Court, after giving full consideration to the entire record of testimony, as well as to the briefs and oral arguments so ably presented.
We find from the evidence that the Will in question was filed for probate in the office of the County Judge of Escambia County on May 20, 1966. Proof of the Will was executed by a subscribing witness, a Mr. Ben L. Davis, who was deceased at the time of this trial but whose deposition was taken on November 29, 1967, and was admitted in evidence in this trial. From said deposition, Mr. Davis admits that he signed the proof of Will in 1966, and he admits the signature to the proof of Will as being his. He seems to be uncertain about some of his actions, and he denies that he had seen Mrs. Farnham sign the Will in 1962 or that he had seen Mr. C. H. Overman sign as a witness. It appears that Mr. Davis made a sworn statement (in proof of Will) that he and Mr. C. H. Overman, in the presence of each other as well as in the presence of and at the special instance and request of Henrietta Farnham, signed their names as witnesses and that Mrs. Farnham signed her name thereto and freely and voluntarily signed and published the same as her Last Will and Testament. This was on May 19th or 20th of 1966. There was no question raised at that date as to whether the signatures of either Mr. Davis or of Mrs. Farnham were genuine.
At a later date, on November 29, 1967, Mr. Davis testified before the County Judge, as mentioned supra, according to his deposition, he having since departed this life, that he had seen the signature reputed to be his; that the signature on the Will of 1962 looked genuine. But when he was confronted with a blown up picture of his signature he decided he had not signed it.
It is necessary to remember that between the time the Will was filed for probate, May 20, 1966, and the time of the deposition, November 29, 1967, approximately 18 months had passed, and the defendant’s counsel admits that the blown up signature of Mr. Davis, taken from what alleged to be the original Will, was a forgery which could be detected by the naked eye. It is the contention of defendant’s counsel that the alterations had been made by copying over the signature so as to give the impression of being a forgery. If this contention is right, then of course, Mr. Davis could have been right that this was not his signature. The same is true about the signature of Mr. Overman.
The testimony of the County Judge is to the effect that the Will was filed for probate, (filed before his Clerk), and he does not known what the signatures looked like at the time of filing for probate. He said he did not know who had examined the Will between the time of filing for probate and when there was some question raised about the legality thereof, which caused him to make a duplicate file. He knew of some attorneys getting the file and getting copies made. On cross-examination, Judge Row-ley, County Judge, testified as follows, inter alia:
“Q. . . . Now, then my question is you really couldn’t say when this tampering took place, it not having been in your custody all this time? (speaking about the signature of the witness) (Emphasis supplied.)
“A. I couldn’t, but I would think that that is in the original state it was in when it was filed.
“Q. Do you know that under oath?
“A. Under oath I would think that it was, sir.
*225 “Q. You think that it was?
“A. Yes, sir, I would. Because that has not been reached by anyone except persons who were supposed to have been persons of honor.
“Q. Other than making that supposition, I mean you don’t know what persons it has reached; it could have reached persons not of honor; now, excluding that presumption—
“A. Yes, sir, before and after it was filed. Before it was filed it could have reached persons of dishonor.
“Q. And after as well?
“A. It could have.”
At another point in the testimony of Judge Rowley, in proving by the defense counsel to show a lack of continuity of chain of custody in the County Judge’s Office, the following questions and answers were recorded:
“Q. Now, do your records reflect to whom you gave this will and the date ?
“A. No, I think, I don’t think the actual records, but we always kept an account of where it was.
“Q. Well, do you have that account?
“A. I don’t, no. It may be in the file. I haven’t searched the file.
“Q. Could you search the file?
“A. I don’t have it as far as I know. We had other personnel at that time and what way they had of keeping up with it I don’t know. . . . No, I don’t find any receipts as such, Mr. Graff, not in the file, or either file.
“Q. Therefore you can not state when it was removed, is that right?
“A. A specific date, No, I don’t think I could.”
With this lack of knowledge of who had access to the file from the date same was filed until some question was raised as to its authenticity, and with the proof of Will as executed by the said witness Davis, when it is this certificate which could have been assumed to be true, it appears to us that the State has failed to show a prima facie case that the defendant had knowingly uttered or published or altered or forged a Will. It is conceded that someone had very amateurishly tampered with the signatures of the witnesses. No one has questioned the authenticity of the signature of Mrs. Farnham. And no one has been able to testify as to the condition of the Will when filed, whether the signatures of witnesses appeared tampered with or not.
There has been adduced considerable testimony about the condition of the Will after the contest started, but when this is boiled down, we are still faced with the question of when the tampering of the Will took place. The County Judge has testified honestly as to all he actually knows. The deposition of Mr. Ben L. Davis shows that he is probably confused, because the only signature he was shown was that of his after it had been tampered with, assuming the defendant’s counsel’s theory is correct. The witness, Charles H. Overman, Jr., has testfied relative to the tampered signature of his father. He did not know whether his deceased father had actually witnessed the Will of Mrs. Farnham or not because it is apparent that someone had written over the signature and had even used a different color ink so that there could not be any mistake that the signatures had been tampered with.
There are many pages of testimony concerning the care of Mrs. Farnham by the appellant, including testimony of apparently reliable witnesses to the effect that Mrs. Farnham had expressed her desire that Miss Pate, the appellant, would get all her *226 property. Also, there was much testimony, most of which was adduced from the appellant on cross-examination, that the appellant had transferred considerable moneys from Mrs. Farnham’s bank account to her own, as well as conveyances to certain real property; but while this evidence may be an issue in a civil case where undue pressure or even fraud could be raised, this evidence had no bearing upon the question of whether or not the defendant did knowingly utter or publish as true a forged, false or altered Will. As a matter of fact, such evidence, which was objected to, should not have been submitted to the jury.
The appellant preserved her objections to the evidence on the grounds that the State had failed to establish that the Will was in the same condition it was at the time of trial as when filed, or at what point it became tampered with.
The presumptions that an official’s duty is properly performed and that public records are correct will not supply missing links in the chain of continuity of custody or possession of evidence, especially when it is shown that others, not known by the public officer, had access to the record to write over, or to tamper with, so as to make it look like forgery. This still does not supply the necessary elements of the crime charged, to convict under the information in this case.
We are of the opinion that the trial court was in error in admitting the Will in evidence which so blatantly indicated a tampering, without having first required the State to prove the continuity of possession or custody, which was not supplied by the testimony of the County Judge. We do not know whether the State can so show this or not, but we think the State should have a chance again.
For these reasons, the judgment and sentence appealed are reversed and set aside and said case is remanded to the lower court for a new trial.
Reversed and remanded for a new trial.
CARROLL, DONALD K., Acting C. J., and RAWLS, J., concur.